NUNNEKER ET AL., APPELLANTS, *v.* MURDOCK ET AL., APPELLEES.

(No. C-820333—Decided March 9, 1983.)

*Messrs. French, Marks, Short, Weiner & Valleau* and *Mr. Donald M. Hemmer,* for appellants.

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Roger E. Friedman,* for appellees Board of County Commissioners et al.

*Messrs. Paxton & Seasongood* and *Mr. Charles W. Anness,* for appellees Roger I. Kuhn et al.

*Mr. William J. Brown,* attorney general, and *Mr. Thomas V. Martin,* for Secretary of State et al.

BLACK, J. This appeal focuses on the sufficiency under R.C. 303.12 of a referendum petition that was signed and submitted by electors of Springfield Township, but rejected by the Hamilton County Commissioners. Specifically, the petition called for a vote on a resolution adopted by the county commissioners that would amend the zoning of certain property in Springfield Township from "C-Residence" to "DD-Planned Multiple Residence." After Resolution No. 641, allowing the zone change, was duly adopted by the board of county commissioners, plaintiffs-appellants (hereinafter, "the circulators") presented a referendum petition in multiple parts to that board under the provisions of R.C. 303.12. The board, however, refused to certify it to the board of elections on the grounds that it did not comply with the statutory requirements.

The circulators sought a judgment in the court of common pleas declaring that the circulated petition complied with the statute and ordering that the issue be certified for submission to the electorate of the township.[1] After the defendants answered the complaint, the circulators moved for summary judgment, and certain defendants filed a cross-motion for summary judgment. The court held that the circulators were not entitled to summary judgment in their favor but that defendants were entitled to summary judgment in their favor, because the referendum petition submitted by the circulators did not comply with the requirements of R.C. 303.12.[2] The complaint was dismissed.

---

[1] The following public officials were named as defendants: the county commissioners, the members and the director of the county board of elections, the Secretary of State of Ohio, the Attorney General of Ohio, and the county prosecutor. The two co-owners of an option to purchase the subject property for development were made defendants on their motion to intervene. The intervening defendants did not file an answer but did move for a continuance of the hearing on the circulators' motion for summary judgment. The record does not reflect any ruling on the motion for continuance; however, the intervening defendants have not pursued the absence of a ruling and apparently waive any error. They joined all the defendants who opposed the appeal, being all defendants except the Secretary of State and the Attorney General.

[2] The pertinent parts of R.C. 303.12 read:

"Such amendment or supplement adopted by the board shall become effective in thirty

On appeal, the circulators assign as the sole error the grant of summary judgment to the defendants and the denial of summary judgment to the circulators. There is no genuine issue of material fact, as the parties agree, and the question is strictly one of law; that is, whether the circulated petition substantially complies with the requirements of R.C. 303.12.

The circulated petition differs in several respects from the statutory form, the reason being that the circulators ac- cepted a form given them by some employee of the board of elections without checking it against the provisions of R.C. 303.12. Whatever mistakes were made were inadvertent, and the record is devoid of any evidence of intent to mislead or defraud. While the judgment entry is not specific about the details of noncompliance, the trial court stated in open court that there were four fatal defects[3] in the petition. We are not per- suaded.

---

days after the date of such adoption unless within thirty days after the adoption of the amendment or supplement there is presented to the board of county commissioners a peti- tion, signed by a number of qualified voters residing in the unincorporated area of the township or part thereof included in the zoning plan equal to not less than eight per cent of the total vote cast for all candidates for governor in such area at the last preceding general elec- tion at which a governor was elected, re- questing the board to submit the amendment or supplement to the electors of such area, for approval or rejection, at a special election to be held on the day of the next primary or general election. Each part of this petition shall contain the number and the full and correct title, if any, of the zoning amendment or supplement resolution, motion, or application, furnishing the name by which the amendment or supple- ment proposal is known and a brief summary of its contents. In addition to meeting the re- quirements of this section, each petition shall be governed by the rules specified in section 3501.38 of the Revised Code.

"The form of a petition calling for a zoning referendum and the statement of the circulator shall be substantially as follows:

"PETITION FOR ZONING REFEREN- DUM

"(If the proposal is identified by a par- ticular name or number, or both, these should be inserted here) . . . . . . . . . . . . . . . . . . . . . . .

"A proposal to amend the zoning map of the unincorporated area of . . . Township, . . . County, Ohio, adopted . . . (date) . . . (followed by brief summary of the proposal).

"To the Board of County Commissioners of . . . County, Ohio:

"We, the undersigned, being electors residing in the unincorporated area of . . . Township, included within the . . . County Zon- ing Plan, equal to not less than eight per cent of the total vote cast for all candidates for governor in the area at the preceding general election at which a governor was elected, re- quest the Board of County Commissioners to submit this amendment or supplement of the zoning resolution to the electors of . . . Township residing within the unincorporated area of the township included in the . . . County Zoning Resolution, for approval or rejection at a special election to be held on the day of the next primary or general election to be held on . . . (date) . . . pursuant to Section 303.12 of the Revised Code.

"Signature  Street  Township  Precinct  County  Date of
        Address                   Signing
        or R.F.D.
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"STATEMENT OF CIRCULATOR

". . . (name of circulator) . . . declares under penalty of election falsification that he is an elector of the state of Ohio and resides at the address appearing below his signature hereto; that he is the circulator of the forego- ing part petition containing . . . (number) . . . signatures; that he witnessed the affixing of every signature; that all signers were to the best of his knowledge and belief qualified to sign; and that every signature is to the best of his knowledge and belief the signature of the person whose signature it purports to be.

" . . . . . . . . . . . . . . . . . . . . . . . . .
"(Signature of circulator)
" . . . . . . . . . . . . . . . . . . . . . . . . .
"(Address)
" . . . . . . . . . . . . . . . . . . . . . . . . .
"(City, village or township, and zip code)"

[3] The trial court also noted that the Af- fidavit and Declaration of Persons Soliciting

Our conclusions are founded on the overriding principle that the process of referendum to determine the will of the people is to be favored. *State, ex rel. Sharpe,* v. *Hitt* (1951), 155 Ohio St. 529, 535 [44 O.O. 489]. "Substantial compliance" with statutory requirements refers, in our judgment, not to technical, mathematical, or administrative matters but to those features of the controverted issue and of the referendum procedure that are essential for a prospective signer to make an informed decision. We believe the petition *sub judice* was sufficient for this purpose. The four alleged defects, and our reasons for concluding that they are not fatal, follow.

(1) The trial court was of the opinion that the petition failed to make it clear that the signers requested the county commissioners to submit the issue to the electorate. We cannot agree, because the language used in the petition expressed a clear intent that the issue "be submitted to the electors of Springfield Township for their approval or rejection." The petition began with the phrase, "We, the undersigned, electors of Springfield Township, Hamilton County, Ohio, respectfully *resolve and order*" (emphasis added); it did not include the verb "request," as does the statutory form, or any similar verb. The intention was, nonetheless, clear. We hold this is neither a substantial deviation from the statutory

form nor a fatal defect. *Northeast Franklin Co.* v. *Cooper* (1975), 45 Ohio App. 2d 137 [74 O.O.2d 161].

(2) The trial court concluded that the failure of the circulators to specify the date of the special election requested on this issue was fatal. The language used by them was "at an election to be held in a manner provided by law," whereas the statutory form has the language, "at a special election held on the day of the next primary or general election to be held on * * * (date)." We do not believe this divergence from the suggested statutory form is fatal. The date of the next election is provided by Ohio law, not by choice of the circulators. R.C. 3501.02(F), as effective March 23, 1981, states that a local issue such as a referendum vote on a zoning change "shall be certified, for placement upon the ballot, to the board of elections not less than seventy-five days before the day of the election." Therefore, the determination of the date of the special election is a mechanical matter; it will be at the next primary or general election that occurs more than seventy-five days after the certification of the petition by the county commissioners to the board of elections. The petition circulators cannot change the date,[4] and a potential signer inquisitive about when the vote will be taken can resolve the question by reference to Ohio law.

We do not believe that *Billington* v.

Signatures in the circulated petition referred to those persons who signed as "electors of the Municipal Corporation," but he did not consider this a fatal defect in his oral summary of his opinion. We agree it is not fatal. The persons signing the petition clearly represented that they resided in Springfield Township, Ohio, not in a municipal corporation.

[4] Further, the circulators have no control over the agenda or pace of business of the county commissioners, and they may place the whole issue in jeopardy if they insert a date for the special election. Assume that they specify to the county commissioners a certain general election eighty days from the day of submis-

sion. Assume, further, that the commissioners take two weeks to validate a petition. Then the certification to the board of elections would be too late for the issue to be submitted at the designated general election, and the issue would be lost forever. In *State, ex rel. English,* v. *Geauga Cty. Bd. of Elections* (1977), 52 Ohio St. 2d 49 [6 O.O.3d 190], the Supreme Court held that the certification period (then sixty days) in R.C. 3501.02(F) is applicable to a referendum procedure under R.C. 519.12 (similar in all pertinent respects to R.C. 303.12) and issued a writ of mandamus to the board of elections to strike an issue from the ballot that had been certified within the sixty-day period.

_Cotner_ (1971), 25 Ohio St. 2d 140 [54 O.O.2d 270], controls the instant decision. In that case, the city of Cleveland sought to present a charter amendment to the municipal electorate in an even-numbered year. Section 8, Article XVIII of the Ohio Constitution specifically requires that if "the next regular municipal election" does not occur within a period not less than sixty nor more than one hundred and twenty days after passage of the ordinance, the ordinance ordering the issue to be submitted "shall provide for the submission of the question at a special election to be called and held within the time aforesaid." Municipal elections are held only in odd-numbered years. The Supreme Court ruled that since the constitutionally mandated period (not less than sixty nor more than one hundred and twenty days after the passage of the ordinance) fell in an even-numbered year, the ordinance had to specify a date for the special election; that failure to specify the date was fatal; and that the election on the proposed amendment (which had been held) was a nullity and without effect. In that case, the date of the special election was not fixed by law but, under the constitutional scheme, had to be determined by the initiating body (the municipal council). In the instant case, the date is fixed by law and cannot be altered by the initiating body (the circulators of the petition).

(3) The third deviation of the circulated petition from the statutory form is that the circulated petition set forth Resolution No. 641 verbatim, instead of "a brief summary of its contents," as provided in the statute. The purpose of requiring a summary is to present fairly and accurately the question or issue to be decided in order to assure a free, intelligent and informed decision by the persons to whom it is presented. Cf. _State, ex rel. Schultz,_ v. _Bd. of Elections_ (1976), 48 Ohio St. 2d 173 [2 O.O.3d 372] (including a resolution in its entirety when only a part

of it was intended to be submitted to the electorate was held to be a fatal defect); _Markus_ v. _Bd. of Elections_ (1970), 22 Ohio St. 2d 197 [51 O.O.2d 277] (setting forth the guiding principle that the text of a ballot statement originating with a referendum petition must fairly and accurately present the issue to be decided).

We hold that in the instant case the inclusion of Resolution No. 641 verbatim was not a substantial or fatal defect. In many cases, the resolution itself will constitute a fair and accurate statement of its terms, and in this case, we find that Resolution No. 641 was readily understandable. Even if the circulators had prepared a summary statement, the board of elections was not obligated to reproduce it, but could use either the entire text or its own condensed summary. If the full text is not used it must be posted in the polling place. R.C. 3505.06.

(4) The circulated petition failed to include the statement, included in the statutory form, that the number of qualified signers was equal to not less than eight percent of the vote at the last preceding gubernatorial election. R.C. 303.12 requires the referendum petition to be "_signed_ by a number of qualified voters residing in the unincorporated area of the township or part thereof included in the zoning plan equal to not less than eight per cent of the total vote cast for all candidates for governor in such area at the last preceding general election at which a governor was elected. * * *." (Emphasis added.) We read the requirement to be that the valid signatures must be equal to that percentage, not that the signers make a representation that they are. The determination of whether the petition actually contains the requisite eight percent falls within the authority of the board of elections, as well as the determination of whether the persons signing the petition are "qualified voters" as specified in the body of R.C. 303.12 or "electors residing in the unincorporated

area" as reflected in the statutory form.[5] It is immaterial, then, whether the petition contains a representation that it is signed by the required number of qualified persons.

The single assignment of error has merit. We reverse the judgment below. There being no genuine issue of material fact, we hold that the circulated petition substantially complies with R.C. 303.12 and that the circulators (plaintiffs-appellants) are entitled to summary judgment as a matter of law. We remand this cause to the court of common pleas for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

KEEFE, P.J., concurs.

KLUSMEIER, J., dissents.

KLUSMEIER, J., dissenting. I respectfully dissent. Although I have no disagreement with the majority in all but one of the deviations noted by the trial court, that one remaining is, in my opinion, evidence of a failure of the referendum petition *sub judice* to comply substantially with the statutory form given in R.C. 303.12. The language given in the statutory form is that the proposal is to be submitted "for approval or rejection at a special election to be held on the day of the next primary or general election to be held on . . . (date) . . . pursuant to Section 303.12 of the Revised Code." The comparable language in the referendum petition as submitted is that the proposal be submitted for "approval or rejection at an election to be held in the manner provided by law." There is a substantial difference between the statutory language and the language of the petition. The referendum

issue must be presented at a special election. R.C. 303.12. The persons solicited for signature are entitled to be informed of the need for a special election because the costs of the special election are chargeable against the subdivision seeking the referendum. R.C. 3501.17. That consideration may be critical to the decision to sign or decline to sign the petition.

The statute requires that the special election be held on the day of the next primary or general election and the statutory form further specifies the time of the election by providing a space to insert the exact date of the primary or general election. The terms of R.C. 303.12 and 519.12 are, for practical purposes, identical. The Supreme Court of Ohio has held that R.C. 519.12 and 3501.02(F) are to be read *in pari materia* and certification of a township zoning question or issue sixty days (now seventy-five days) prior to election is the minimum time in order to assure that the voters will have an adequate time to become familiar with the issue to be voted upon. *State, ex rel. English,* v. *Bd. of Elections* (1977), 52 Ohio St. 2d 49, 51 [6 O.O.3d 190]. In a proposal to amend the charter of the city of Cleveland, pursuant to Sections 8 and 9, Article XVIII of the Ohio Constitution, the Supreme Court of Ohio held that the failure of the city council to designate the date of a special election on the issue was a "gross omission, not a trivial one." *Billington* v. *Cotner* (1971), 25 Ohio St. 2d 140, 152 [54 O.O.2d 270]. Although the comment is perhaps *obiter dictum,* the Supreme Court of Ohio in a unanimous opinion stated that had appellant failed to place any date of the election involved in the space provided, "it is clear that the part-petitions would be invalid." *Hill* v. *Bd. of Elections* (1981), 68 Ohio St. 2d 39, 41 [22 O.O.3d 179]. Finally, the lack of a valid circulator's affidavit was held in

---

[5] The term "elector" or "qualified elector" is defined in R.C. 3501.01(N). The term "voter" is distinguished by a separate definition in R.C. 3501.01(O). The effect of using them synonymously was apparently not raised below nor argued here. We therefore do not address that issue.

another opinion by the Supreme Court of Ohio to invalidate a nominating petition. The language employed by the court is relevant. "Substantial compliance does not contemplate complete omission. The statutory form, like any suggested statutory form, need not be followed absolutely as to its wording. The statute itself provides for only substantial compliance. However, as we have said, substantial compliance would not warrant complete omission * * *." *State, ex rel. Allen,* v. *Bd. of Elections* (1959), 170 Ohio St. 19, 20 [9 O.O.2d 337].

I would affirm the judgment of the trial court.